NO.   91-243

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

DON EDGAR BURRIS (DOROTHY M.
BARNHART, et al., Claimants),

          Claimant and Appellant,

     v.

EMPLOYMENT RELATIONS DIVISION/
DEPARTMENT OF LABOR & INDUSTRY,

          Defendants and Respondents.


APPEAL FROM:   Workers' Compensation Court,
               The Honorable Timothy W. Reardon, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Don Edgar Burris, Attorney at Law,
               Billings, Montana

          For Respondents:

               Claren Neal, Department of Labor and
               Industry, Helena, Montana


                    Submitted on Briefs:   October **31,** 1991

                              Decided:   April 15, 1992

FILED

APR 15 1392

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Filed:

_____
              Clerk

Justice R. C. McDonough delivered the Opinion of the Court

Don Edgar Burris appeals from the judgment of the Workers' Compensation Court which held that the Department of Labor and Industry had authority to regulate attorney fees and that Burris did not show any injury under his constitutional claims. We affirm.

The issues on appeal are whether the Department of Labor and Industry has the authority to regulate attorney fees under § 39-71-613, MCA (1987), and whether § 39-71-613, MCA (1987), is unconstitutional.

Attorney Don Edgar Burris entered into attorney retainer agreements with respect to three separate clients between July 17, 1989 and January 31, 1990. All three agreements provided that Burris be retained on a contingency fee basis. Burris submitted the attorney retainer forms provided by the Department of Labor and Industry to the Employment Relations Division (ERD) as required by the statute. However, he included an attachment titled, "Attorney's Fee Contract RE: Workers' Compensation." The contract provided fees of $250.00 per hour or a contingency of twenty-five percent for cases that do not go before the Workers' Compensation Court, or thirty-three and one-third percent for cases that go before the Workers' Compensation Court. The fees provided in Burris' attached contract were higher than those allowed by law. The ERD subsequently denied the approval of the attorney retainer forms.

Burris appealed ERD's decision and a hearing followed which resulted in affirmance of ERD's decision. Burris next appealed to

the Workers' Compensation court. The Workers' Compensation Court affirmed the decision of the Hearings Bureau of the Department of Labor and Industry (the Department). This appeal follows.

Whether attorney fees can be regulated is controlled by statute and therefore is a question of law. The standard of review utilized by this Court when reviewing decisions of the Workers' Compensation Court is:

> When an issue raises only questions of law, this court is free to reach its own conclusions . . . Doig v. State Comp. Ins. Fund (1991), **248** Mont. 50. 61, 809 P.2d **12,** 13, citing Solheim v. Tom Davis Ranch (1984), 208 Mont. 265, 272, 677 P.2d 1034, 1037-1038. In reviewing conclusions of law we will determine if the lower court's or agency's interpretation of the law is correct. See also Steer, Inc. v. Dept. of Revenue, (1990), **245** Mont. 470, 803 P.2d 601, 603.

The Workers' Compensation Court found that § 39-71-613, MCA, granted the Department authority to require an attorney to submit a contract of employment, on a form provided by the Department, stating the terms of the fee agreement. The court further found that the Department had authority to regulate attorney fees in any workers' compensation case.

Section 39-71-613, MCA (1987), provides:

> (1) When an attorney represents or acts on behalf of a claimant <u>or any other party</u> on any workers' compensation claim, the attorney shall submit to the department a contract of employment, on a form provided by the department, stating specifically the terms of the fee arrangement between the attorney and the claimant.
> (2) The administrator of the division [now the Department of Labor and Industry] shall regulate the amount of the attorney's fee in any workers' compensation case. In regulating the amount of the fee, the department shall consider:
> (a) the benefits the claimant gained due to the efforts of the attorney:
> (b) the time the attorney was required to spend on the case:
> (c) the complexity of the case: and

3

(d) any other relevant matter the department may consider appropriate.
(3) If an attorney violates a provision of this section, a rule adopted under this section, or an order fixing an attorney's fee under this section, he shall forfeit the right to any fee which he may have collected or been entitled to collect. (Emphasis added.)

The Workers' Compensation Judge relied on our decision in Wight v. Hughes Livestock Company, Inc. (1983), 204 Mont. 98, 664 P.2d 303, in its determination that the Department had the authority to regulate attorney fees. There we said:

> The concern of the legislature, the spirit of the Workers' Compensation law are one and the same: that the cost of repairing a worker's injuries or replacing his lost earning capacity shall be the burden of the industry, and not that of the injured worker. It is from that viewpoint that the Workers' Compensation Court or Division should determine the reasonableness of attorneys fees and exercise discretion in regulating the same.

Wight at 108, 109, 664 P.2d at 309.

We hold that the Workers' Compensation Court is correct in its application of the law.

The more difficult issue is whether § 39-71-613, MCA, denies due process of law and equal protection of the law. Specifically, Burris argues that his constitutional rights are being violated because the Department regulates the fees of only claimants' attorneys and not defense attorneys, impairing his right to contract. This, he argues, is in contravention of the statute which provides, "When an attorney represents or acts on behalf of a claimant or any other party . . ." (Emphasis added.) Burris argues that the statute is unambiguous. He maintains the statute needs no interpretation, that "any other party" means defense attorneys.

The Workers' Compensation Court found that Burris did not set

4

forth a factual or legal analysis to support his constitutional claims, nor did he show any injury resulting from the legislation regulating attorney fees. We agree.

Burris first argues he was denied due process. When a due process claim is involved, the initial question is whether due process is required and if so, how much? The Supreme Court has stated, "When protected interests are implicated, the right to some kind of prior hearing is paramount." Board of Regents v. Roth (1971), 408 U.S. 564, 569-570. Burris was given a hearing by the Department, by the Workers' Compensation Court and now by this Court. Thus, Burris received due process.

Burris also argues that the Department's regulation of claimant's attorneys and not defense attorneys in workers' compensation cases violates equal protection. Suffice to say that there is no suspect class involved, nor is a fundamental right involved. Thus the strict scrutiny test does not apply.

Nor do these issues fall under the middle tiered analysis. This Court has employed the middle tiered analysis in cases involving the constitutionally protected interests of education and welfare. Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 45, 776 P.2d 488, 502.

The question is whether the statute and its application is rationally related to a legitimate government interest. Meech at 45, 776 P.2d at 502. Section 39-71-105, MCA (1987), declares the public policy behind the workers' compensation law:

> (1) It is an objective of the Montana workers' compensation system to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease. Wage-

5

loss benefits are not intended to make an injured worker whole: they are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.

(2) A worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, it is an objective of the workers' compensation system to return a worker to work as soon as possible after the worker has suffered work-related injury or disease.

We hold that § 39-71-613, MCA, and the Department's application of the statute to a claimant's attorney's fee is rationally related to the government's legitimate interest in protecting the claimant's net benefits in workers' compensation cases. The Act is essentially for the protection of the injured worker and his dependants, and protection from impaired fee agreements is rationally related thereto, regardless of any interpretation or implementation by the Department of the words "any other party."

For the foregoing reasons, the judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

6

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

The Division of Workers' Compensation's efforts to limit the availability of attorneys who will represent injured workers by artificially limiting claimants' ability to pay those attorneys without any comparable limitation on the rights of employers or insurers, clearly violates the Equal Protection Clause of Article 11, Section **4**, of the Montana Constitution.

I do not agree that when the State arbitrarily and selectively interferes with the right of a litigant to contract and pay for the services of an attorney that that interference does not deserve middle-tiered scrutiny under the Equal Protection Clause. However, for purposes of this discussion, let's assume that the majority's favorite level of scrutiny, the rational basis or "almost anything goes" test applies. The Department of Labor's blatant discrimination against claimants and their attorneys does not even pass that minimal level of scrutiny.

The problem with the majority's conclusion is that it is based upon blind acceptance of the Department of Labor's bald assertion that these limitations on fee agreements between claimants and their attorneys are for the benefit of injured workers. A brief review of recent history in the area of attorney fee regulation discloses that nothing could be further from the truth.

The Division of Workers' Compensation was given the statutory authority to regulate claimant's attorney fees in 1975. Section

7

39-71-613, MCA (1975). Pursuant to that authority, the Division of Workers' Compensation enacted 24.29.3801, ARM, which until 1987 allowed attorneys to enter into fee agreements with injured workers for contingent fees ranging from 25 to 40 percent, depending on whether the case was resolved prior to trial, following trial, or on appeal. Attorneys were only allowed to recover fees when benefits were recovered due to the efforts of the attorney. Attorneys were not permitted to recover a fee for benefits that had never been disputed.

Furthermore, where benefits were denied or the amount was disputed, and the claimant later prevailed, the insurer who denied his benefits was responsible for payment of his fees. (Sections 39-71-611, MCA (1973), and 39-71-612, MCA (1975).) In *wight v. Hughes Livestock, Inc.* (1983), 204 Mont. 98, 664 P.2d 303, we held that the purpose of these statutes was to assure that claimants whose benefits had been wrongfully denied would eventually receive the net amount of benefits they had been entitled to under the law without having to deduct costs and attorney fees incurred to collect those benefits. We held that in order to further that purpose, claimants could recover the full amount of their contingent fee under § 39-71-611, MCA, so long as that fee had been approved by the Division of Workers' Compensation.

Had the Department of Labor or its Division of Workers' Compensation been truly concerned about protecting injured workers

from paying excessive attorney fees or protecting the best interests of the worker, as it righteously claims in this case, that would still be the law. Attorneys would be precluded from recovering a fee unless the benefits had been recovered due to the attorney's effort. However, when the attorney's efforts were necessary to recover benefits to which the claimant had been entitled in the first place, the insurer who wrongfully denied them would be responsible for the full amount of attorney fees and costs incurred so that the claimant's net recovery would equal the benefits to which he was lawfully entitled.

Instead, the Division of Workers' Compensation requested an amendment to the Workers' Compensation Act in the very next legislative session following the *Wight* decision. That amendment became § 39-71-614, MCA (1985), and limited the amount of attorney fees that a claimant could recover from an insurer to an amount based upon an hourly rate. The effect was that even though the claimant's contract with his attorney may call for a contingent fee, he would, in most cases, be precluded from recovering the full amount of that fee, even when the fee had been necessitated by the wrongful denial of his claim. So much for the Division of Workers' Compensation's concern for the workers' best interests. However, the Department of Labor's and the Division of Workers' Compensation's concern for the best interests of workers did not end in 1985. In 1987, it advocated massive amendments to the

9

Workers' Compensation Act which were ultimately passed, based upon its lobbying efforts. Those amendment drastically reduced benefits that could be recovered by injured workers. **See** §§ **39-71-701, -702, -703,** and **-741,** MCA **(1987).** In addition, those same Division-sponsored amendments made it much more difficult for claimants to recover attorney fees and costs, even when it was necessary to retain an attorney because their benefits were wrongfully denied, Both § **39-71-611** and **-612,** MCA, were amended to require that before attorney fees could be recovered, claimant must prove that the denial of his benefits was unreasonable.

At the same time, the Division of Workers' Compensation was lobbying through substantial cuts in workers' benefits and severe restrictions on the ability of workers to recover attorney fees from insurers, it proposed amending **24.29.3801,** ARM, to further restrict the fees that claimants could pay attorneys. The modified rule provided as follows:

> **(3)** Except as provided in subsection **(7),** an attorney representing a claimant on a workers' compensation claim who plans to utilize a contingent percentage fee arrangement to establish the fee with the claimant, may not charge a fee above the following amounts:

> (a) For cases that have been settled without an order of the Workers' Compensation Judge or the Supreme Court, twenty percent (20%) of the amount of compensation payments the claimant receives due to the efforts of the attorney.

> **(b)** For cases that go to a hearing before the Workers' Compensation Judge or the Supreme Court, twenty-five percent (25%) of the amount of

10

additional compensation payments the claimant receives from an order of the Workers' Compensation Judge due to the efforts of the attorney.

(4) The fee schedule set forth in subsection *(3)* does not preclude the use of other attorney fee arrangements, such as the use of a fee system based on time at a reasonable hourly rate not exceeding *$75* per hour, but the total fee charged may not exceed the schedule set forth in subsection *(3)* except as provided in subsection (7). When such fee arrangement is utilized, the contract of employment shall specifically set forth the fee arrangement, such as the amount charged per hour.

Hearings were held on the proposed amendment to the Division's administrative rule regarding attorney fees and opposition was virtually unanimous. However, in spite of that response to the proposal, it was adopted by the Division of Workers' Compensation.

Although the Department of Labor's self-serving representation in this case is that the further restriction of claimants' attorney fees was for the benefit of injured workers, the real purpose is more evident from the declaration of public policy that accompanied the Division's 1987 amendments to the Workers' Compensation Act. That declaration is found, in part, in § 39-71-105(3), MCA (1987), which states:

(3) Montana's workers' compensation and occupational disease insurance systems are intended to be primarily self-administering. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates. <u>To meet these objectives, the system must be designed to minimize reliance upon lawyers and the courts to obtain benefits and interpret liabilities.</u> [Emphasis added.]

In other words, the purpose for the limitations on attorney fees that have been challenged by the claimant's attorney in this

case was simply to eliminate attorneys from the process of resolving workers' compensation disputes. The problem from a constitutional perspective is that the only class of attorneys *so* effected were those attorneys who represent claimants. There were no similar restrictions on the rights of employers or insurers to pay their attorneys any amount the market would bear.

The brief point is this: If the Department of Labor or its Division of Workers' Compensation was honestly concerned about injured workers having to take money from their already inadequate disability benefits to pay for attorney fees, they would not have gone to the great lengths they have to erode the opportunity for claimants to recover fees from insurers who have wrongfully denied their benefits. Therefore, history demonstrates that there is no basis in fact for that concern and it cannot serve as the rational basis for discriminating against claimants as opposed to employers or insurers.

If, on the other hand, the real purpose for the Department of Labor's and its Division of Workers' Compensation's efforts to restrict attorney fees is to eliminate attorneys from the workers' compensation system, then it has done so selectively and unfairly. It has eliminated only those attorneys who represent claimants. Claimants are the parties to a workers' compensation dispute who are in the most need of representation. Therefore, eliminating the claimant's attorney, while leaving sophisticated insurance companies, and sometimes large corporate employers, free to hire

**12**

the best attorney they can find, has no rational basis as this Court has previously defined that concept.

In *Meech* v. *Hillhaven West, Inc.* (1989), *238* Mont. 21, 776 P.2d 488, we cited with approval the following standard for judging whether class legislation passes the rational basis or "almost anything goes" test:

> "The test of the constitutionality of class legislation is whether the classification has some reasonable, just and practical basis and whether the law operates equally upon every person within the class. . . ."

*Meech*, 776 P.2d at 502, (quoting *Reeves* v. *Ille Electric Co.* (1976), 170 Mont. 104, 551 P.2d 647).

Who can question that the calibre of services available from the legal profession are, as in every other profession, related to the amount that can be paid for those services? How can it be argued that it is "reasonable or just" to arbitrarily limit the quality of services available to those in most need of legal services when no similar limitation is placed on those parties who are already most sophisticated in the workers' compensation laws.

There is no rational basis for the Department of Labor's concerted efforts to leave injured workers without representation, other than the unjust and unreasonable purpose of being able to dictate who does and does not receive disability benefits. The regulations which are challenged in this case are part of a concerted effort by the Department of Labor and the Division of

Workers' Compensation to place the burden of that Division's mismanagement on injured workers--those members of society who are least able to bear that burden.

For these reasons, I conclude that the Division of Workers' Compensation's discriminatory regulation of attorney fees found in 24.29.3802, ARM, has no rational basis, and therefore, violates the Equal Protection Clause of Article 11, Section **4**, of the Montana Constitution. I would reverse the judgment of the Workers' Compensation Court.

_____
Justice

I concur in the foregoing dissent of Justice Trieweiler.

_____
Justice

14